UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CIT BANK, N.A.,

                              Plaintiff,

       v.

OLUCHI NWANGANGA *a/k/a* Oluchi
Nwokocha,

                              Defendant.

No. 17-CV-874 (KMK)

OPINION & ORDER

Appearances:

Allison J. Schoenthal, Esq.
Courtney L. Colligan, Esq.
Nicole E. Schiavo, Esq.
Hogan Lovells US LLP
New York, NY
*Counsel for Plaintiff*

Allen A. Kolber, Esq.
Law Offices of Allen A. Kolber, Esq.
White Plains, NY
*Counsel for Defendant*

KENNETH M. KARAS, District Judge:

       Plaintiff CIT Bank, N.A. ("Plaintiff") brought this Action against Oluchi Nwanganga

("Defendant") to foreclose a residential mortgage.  (Compl. (Dkt. No. 1).)[1]  Defendant

counterclaimed for economic damages, fraud and misrepresentation, violation of the Deceptive

Practices Act, N.Y. Gen. Bus Law § 349, estoppel, and costs and fees.  (Answer (Dkt. No. 18).)

---

[1] Plaintiff also sued Charles Nwokocha, (Compl.), a co-owner and co-mortgagor on the Property, but he failed to file an Answer or otherwise appear in this Action, (*see generally* Dkt). Therefore, Plaintiff requested that the Court enter default against Nwokocha, (Dkt. Nos. 24, 47–48), and a clerk's certificate of default was entered on August 16, 2018, (Dkt. No. 49).  Plaintiff has not yet filed an order to show cause for a default judgment against Nwokocha.

Before the Court is Plaintiff's Motion for Summary Judgment, fees and costs, appointment of a referee to effectuate a sale and dispersal of the resulting funds, and dismissal of the counterclaims (the "Motion"). (Notice of Mot. For Summ. J. (Dkt. No. 37).) For the following reasons, the Motion is granted.

## I. Background

### A. Factual Background

The following facts are taken from Plaintiff's statement pursuant to Local Civil Rule 56.1, (Pl.'s Rule 56.1 Statement ("Pl.'s 56.1") (Dkt. No. 39)), and "are uncontested and admissible," *T.Y. v. New York City Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009).[2]

Plaintiff CIT was previously a federal savings bank known as OneWest Bank, FSB. (Pl.'s 56.1 ¶ 1.) On February 28, 2014, it changed its charter to become a national banking association and changed its name to OneWest Bank N.A. (*Id.*) On August 3, 2015, OneWest Bank N.A. changed its name to CIT Bank, N.A.—Plaintiff's current name. (*Id.*)

On July 17, 2017, Defendant obtained a mortgage loan from IndyMac Bank, F.S.B., a federally chartered savings bank, in the original principal amount of $468,000.00, as memorialized in a note executed by Defendant (the "Note"), (Aff. of Rebecca Marks in Supp. of Mot. for Summ. J. ("Marks Aff.") Ex. A ("Note") (Dkt. No. 40)), and secured by a mortgage

---

[2] The Court finds the facts set forth in Plaintiff's 56.1 statement undisputed because they are supported by the record and because Defendant has not filed a response, let alone an opposition to the Motion identifying disputes of material fact. As the Second Circuit has explained, "[a] nonmoving party's failure to respond to a Rule 56.1 statement permits the court to conclude that the facts asserted in the statement are uncontested and admissible," and that, "[i]n the typical case, failure to respond results in a grant of summary judgment once the court assures itself that Rule 56's other requirements have been met." *T.Y.*, 584 F.3d at 418 (internal quotation marks omitted); *see also Suares v. Cityscape Tours, Inc.*, 603 F. App'x 16, 18 (2d Cir. 2015) (same); *Leneau v. City of New York*, No. 16-CV-0893, 2018 WL 583120, at *4 (S.D.N.Y. Jan. 26, 2018) (same).

executed by Defendant and non-appearing Defendant Nwokocha (the "Mortgage" and collectively with the Note, the "Loan") on real property located at 41 Summit Park Road, Spring Valley, NY 10977 (the "Property"), (*id.* Ex. B ("Mortgage")). (Pl.'s 56.1 ¶¶ 2–3.) On March 19, 2009, Plaintiff, as OneWest Bank, FSB, acquired substantially all assets and mortgage servicing rights of IndyMac Federal from the Federal Deposit Insurance Corporation ("FDIC"), including the Loan. (*Id.* ¶ 4.) Specifically, substantially all of the assets of IndyMac Federal were transferred to Plaintiff pursuant to a Master Purchase Agreement, under which the FDIC, as its receiver, entered into a Loan Sale Agreement with Plaintiff that included Defendant's Loan. (Marks Aff. ¶¶ 6–8; *id.* Exs. C–E.)

Plaintiff obtained physical possession of the Note with Allonges, and was the holder of the indorsed Note, through its counsel, on February 6, 2017, when this Action was commenced. (Pl.'s 56.1 ¶ 5.) IndyMac indorsed the Note in blank. (Marks Aff. ¶ 9; *id.* Ex. A at 5.) Additionally, two Allonges were affixed to the Note: (1) one by the FDIC "as Receiver for IndyMac Federal Bank, FSB, successor to IndyMac Bank, F.S.B.," indorsing the Note specifically to OneWest Bank, FSB, (*id.* Ex. A at 7); and (2) one by OneWest Bank, FSB in blank, (*id.* at 8). Plaintiff, through its counsel, obtained physical possession of the original indorsed Note beginning on January 13, 2017, and currently still holds the Note. (Pl.'s 56.1 ¶¶ 5–6.)

On August 1, 2013, certain terms of the Loan were modified pursuant to a Modification Agreement. (Pl.'s 56.1 ¶ 7 (citing Marks Aff. Ex. F ("Modification")).) Specifically, past due arrears were capitalized to create a new principal balance of $475,696.69, and the interest rate was reduced for different time periods through the new maturity date of July 1, 2053. (Modification 2–3.) However, Defendant defaulted on the Loan by failing to timely make the

payment due June 1, 2016 and all payments due thereafter. (Pl.'s 56.1 ¶ 8.) On August 11,

2016, Plaintiff mailed 90-day notices as required by New York Real Property Actions and

Proceedings Law § 1304 to Defendant and Nwokocha at the Property, by certified mail and first

class mail. (*Id.* ¶ 9.) Plaintiff filed proof of these mailings with the New York State Department

of Financial Services on August 15, 2016. (*Id.* ¶ 10.) On August 12, 2016, pursuant to

paragraphs 15 and 22 of the Mortgage, Plaintiff, through its servicing division, mailed notice of

default dated August 10, 2016 to Defendant and Nwokocha at the Property by first class mail and

certified mail. (*Id.* ¶ 11.) However, Defendant failed to cure the default. (*Id.* ¶ 12.) Plaintiff

therefore invoked its right to accelerate the Mortgage. (*Id.*) As of the date the Complaint was

filed, an unpaid principal balance of $454,483.46, plus interest and fees, remained due and owing

to Plaintiff on the Loan. (*Id.* ¶ 13.)

B.  Procedural History

Plaintiff filed the Complaint on February 6, 2017. (Compl.) After service was attempted

three times, Defendant was served on March 4, 2017 by affixing a copy of the Complaint on the

door of the Premises. (Dkt. No. 10.) On May 11, 2017, Defendant's counsel filed a notice of

appearance on her behalf. (Dkt. No. 16.) Defendant filed an Answer, including her affirmative

defenses and counterclaims, on May 25, 2017. (Answer.) Defendant also filed a Rule 26

disclosure on August 31, 2017. (Dkt. No. 26.)

The Court held an initial conference on September 12, 2017 and adopted a case

management and scheduling order. (Dkt. No. 28; Dkt. (entry for Sept. 12, 2017).) However,

neither Party served any discovery requests; indeed, both Parties indicated they did not intend to

conduct any discovery in this Action during a telephone status conference with Magistrate Judge

Davison on November 3, 2017. (Dkt. No. 31; *see also* Dkt. No. 33.) Therefore, on November

27, 2017, Plaintiff filed a pre-motion letter indicating the grounds on which it would move for summary judgment. (Letter from Courtney Colligan, Esq. to Court (Nov. 27, 2017) (Dkt. No. 33).) Defendant filed a letter indicating she "ha[d] no objection" to Plaintiff's request for a pre-motion conference. (Letter from Allen A. Kolber, Esq. to Court (Dec. 11, 2017) (Dkt. No. 35).) The Court then set a briefing schedule. (Dkt. No. 36.)

Plaintiff filed the instant Motion and accompanying papers on January 11, 2018. (Not. of Mot.; Mem. of Law in Supp. of Mot. for Summ. J. ("Pl.'s Mem.") (Dkt. No. 38); Pl.'s 56.1; Marks Aff.; Decl. of Courtney Colligan in Supp. of Mot. for Summ. J. ("Colligan Decl.") (Dkt. No. 41); Decl. of Marc J. Gross in Supp. of Mot. for Summ. J. ("Gross Decl.") (Dkt. No. 42); Pl.'s Aff. of Sums Due ("Pl.'s Aff") (Dkt. No. 43).) Defendant filed a letter requesting an adjournment of the conference scheduled before the Court on January 31, 2018, (Letter from Allen A. Kolber, Esq. to Court (Jan. 24, 2018) (Dkt. No. 44)), which the Court granted "until the summary judgment motion is decided," (Dkt. No. 45). However, Defendant never filed an opposition to the Motion.

## II. Discussion

### A. Standard of Review

Summary judgment is appropriate where the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 123–24 (2d Cir. 2014) (same). "In determining whether summary judgment is appropriate," a court must "construe the facts in the light most favorable to the non-moving party and . . . resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (internal quotation marks omitted). "It is the movant's burden to

show that no genuine factual dispute exists." *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004).

"However, when the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim," in which case "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *CILP Assocs., L.P. v. Pricewaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) (alteration and internal quotation marks omitted). Further, "[t]o survive a [summary judgment] motion . . . , [a nonmovant] need[s] to create more than a 'metaphysical' possibility that his allegations were correct; he need[s] to 'come forward with specific facts showing that there is a genuine issue for trial,'" *Wrobel v. County of Erie*, 692 F.3d 22, 30 (2d Cir. 2012) (emphasis omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)), "and cannot rely on the mere allegations or denials contained in the pleadings," *Guardian Life Ins. Co. v. Gilmore*, 45 F. Supp. 3d 310, 322 (S.D.N.Y. 2014) (internal quotation marks omitted); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) (same).

"On a motion for summary judgment, a fact is material if it might affect the outcome of the suit under the governing law." *Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene*, 746 F.3d 538, 544 (2d Cir. 2014) (internal quotation marks omitted). At this stage, "[t]he role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Brod*, 653 F.3d at 164 (internal quotation marks omitted). Thus, a court's goal should be "to isolate and dispose of factually unsupported claims." *Geneva Pharm. Tech. Corp. v. Barr Labs. Inc.*, 386 F.3d 485, 495 (2d Cir. 2004) (internal quotation marks

omitted) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)). However, a district court should consider only evidence that would be admissible at trial. *See Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 164 F.3d 736, 746 (2d Cir. 1998). "[W]here a party relies on affidavits . . . to establish facts, the statements 'must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated.'" *DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012) (quoting Fed. R. Civ. P. 56(c)(4)).

Finally, "Rule 56 does not allow district courts to automatically grant summary judgment on a claim simply because the summary judgment motion . . . is unopposed." *Jackson v. Fed. Exp.*, 766 F.3d 189, 194 (2d Cir. 2014). Rather, the court "must ensure that each statement of material fact is supported by record evidence sufficient to satisfy the movant's burden of production even if the statement is unopposed," and "must determine whether the legal theory of the motion is sound." *Id.* However, while a court must provide "an explanation" for its decision, it need not "write [an] elaborate essay[] using talismanic phrases[;]" instead, "[a]ll that is required is a record sufficient to allow an informed appellate review." *Id.* at 196–97.

### B. Analysis

#### 1. Prima Facie Entitlement to Foreclosure

Plaintiff argues that it is entitled to a judgment of foreclosure because it has established a prima facie case as a matter of law. (Pl.'s Mem. 7–8.) Under New York law, a plaintiff establishes a prima facie entitlement to summary judgment in a foreclosure action by producing the note, the mortgage, and proof of the defendant's default. *See Onewest Bank N.A. v. Louis*, No. 15-CV-597, 2016 WL 3552143, at *5 (S.D.N.Y. June 22, 2016), *adopted by* 2016 WL 4059214 (S.D.N.Y. July 28, 2016); *see also Gustavia Home, LLC v. Rutty*, 720 F. App'x 27, 28–

29 (2d Cir. 2017) (citing *Wells Fargo Bank, N.A. v. Walker*, 35 N.Y.S.3d 591, 592 (App. Div. 2016)). "Once the plaintiff has established its prima facie case by presenting the Note, Mortgage and proof of default, the [plaintiff] [m]ortgagee has a presumptive right to foreclose, which can only be overcome by an affirmative showing by the [defendant] [m]ortgagor." *Onewest Bank N.A.*, 2016 WL 3552143, at *5 (internal quotation marks omitted).

Plaintiff has established its prima facie case by submitting copies of the Note and Mortgage, together with the Notices of Default, 90-Day Notices, and an Affidavit from Rebecca Marks, Plaintiff's Assistant Vice President, and a Declaration of Marc J. Gross, Plaintiff's attorney, attesting to Defendant's failure to timely make payments due under the Loan. (*See* Marks Aff. ¶¶ 4–23; Note; Mortgage; Modification; Marks Aff. Exs. G–I (notices).) Defendant did not oppose the instant Motion, let alone provide evidence creating a dispute of fact regarding either the authenticity or accuracy of Plaintiff's evidence. Therefore, the Court could end its analysis here and conclude that Plaintiff is entitled to a judgment of foreclosure. *See Onewest Bank N.A.*, 2016 WL 3552143, at *5–6 (noting that a defendant must make an evidentiary "showing sufficient to overcome [the plaintiff's] presumptive right to foreclosure" and that failure to file an opposition to a summary judgment motion means a party "cannot defeat summary judgment"); *1st Bridge LLC v. William Lee Freeman Garden Apts. LLC*, No. 10-CV-3191, 2011 WL 2020568, at *1 (S.D.N.Y. May 23, 2011) ("Because the defendants have not opposed the plaintiff's motion, they have not met their burden of producing evidence of a question of fact regarding any defenses to foreclosure.") However, in the interest of thoroughness, the Court will briefly address Plaintiff's affirmative defenses raised in her Answer.

### 2. Affirmative Defenses

Plaintiff's Answer raises eight affirmative defenses: (1) Plaintiff lacks standing to foreclose on the Property; (2) Plaintiff is not the holder or owner in due course of the original Note; (3) the Court lacks personal jurisdiction over Defendant due to improper service of process; (4) Plaintiff failed to mitigate its damages; (5) the amount alleged to be due is incorrect; (6) Plaintiff breached its duty of good faith and fair dealing owed to Defendant; (7) Plaintiff breached its fiduciary duty owed to Defendant; and (8) the six-year statute of limitations to commence a foreclosure action has expired. (Answer ¶¶ 2–11.)

### a. Standing and Note Ownership

"Under New York law, 'a plaintiff establishes its standing in a mortgage foreclosure action by demonstrating that, when the action was commenced, it was either the holder or assignee of the underlying note.'" *OneWest Bank, N.A. v. Melina*, 827 F.3d 214, 222 (2d Cir. 2016) (per curiam) (alteration omitted) (quoting *Wells Fargo Bank, N.A. v. Rooney*, 19 N.Y.S.3d 543, 544 (App. Div. 2015)); *see also OneWest Bank, N.A. v. Guerrero*, No. 14-CV-3754, 2018 WL 2727891, at *3 (S.D.N.Y. June 6, 2018) (same). "Either a written assignment of the underlying note or the physical delivery of the note prior to the commencement of the foreclosure action is sufficient to transfer the obligation, and the mortgage passes with the debt as an inseparable incident." *Melina*, 827 F.3d at 222 (quoting *U.S. Bank, N.A. v. Collymore*, 890 N.Y.S.2d 578, 580 (App. Div. 2009)).

Here, Plaintiff was assigned the Note through the Loan Sale Agreement between FDIC, as Receiver of IndyMac Federal, and Plaintiff. (Marks Aff. ¶ 7.) Specifically, the Agreement provided that FDIC, as receiver and conservator for IndyMac Federal, "hereby sells, transfers, conveys, assigns and delivers to [Plaintiff], and [Plaintiff] hereby purchases, accepts and

assumes from the Seller . . . all of the Seller's rights, title and interests in, to and under the Assets," (*id.* Ex. D § 2.01(a)), which included Defendant's Mortgage Loan, (*id.* § 2.01(a)(iii); *id.* Ex. E (schedule)).  This written assignment is sufficient to establish Plaintiff's standing.  *See Melina*, 827 F.3d at 223 (holding that the assignment under the Loan Sale Agreement between FDIC and OneWest "sufficed to give OneWest standing to foreclose"); *CIT Bank N.A. v. Elliott*, No. 15-CV-4395, 2018 WL 1701947, at *8–9 (E.D.N.Y. Mar. 31, 2018) (same); *see also Suraleb, Inc. v. Int'l Trade Club, Inc.*, 788 N.Y.S.2d 403, 404 (App. Div. 2004) ("No special form or language is necessary to effect an assignment as long as the language shows the intention of the owner of a right to transfer it." (internal quotation marks omitted)).

Moreover, Plaintiff submitted evidence that it was the holder of the indorsed Note at the commencement of this Action.  The Note contains an endorsement in blank by IndyMac.  (Note at 5.)  The Alloges affixed to, and part of, the Note include indorsements (1) from the FDIC, as Receiver for IndyMac FSB, successor to IndyMac, to OneWest Bank, FSB, Plaintiff's predecessor, and (2) from OneWest Bank, FSB in blank.  (Note at 7–8; *see also* Marks Aff. ¶ 9.)  Plaintiff's counsel avers that Plaintiff, through counsel, had physical possession of the original indorsed note as of February 2, 2017 and maintained possession on February 6, 2017, when this Action commenced.  (Gross Decl. ¶¶ 3–4.)  Additionally, Plaintiff attached a copy of the indorsed Note to the Certificate of Merit filed with the Complaint.  (Dkt. No. 6 Ex. A.)  Therefore, Plaintiff was the holder of the Note at the time this Action commenced and has standing to foreclose on the Property.  *See Melina*, 827 F.3d at 223 ("New York courts have repeatedly held that proof of physical possession—such as the affidavits of [the plaintiff's] corporate representative and counsel in this case—is sufficient on its own to prove a plaintiff's standing to foreclose on the mortgage associated with the note.") (collecting cases); *Guerrero*,

2018 WL 2727891, at *4 (holding that affidavit from the plaintiff's assistant secretary attesting that the plaintiff "is the owner and holder of the . . Note" and "had physical possession of the note, indorsed in blank" prior to commencement of the lawsuit was sufficient to confer standing); *U.S. Bank Nat. Ass'n v. Saravanan*, 45 N.Y.S.3d 547, 548–49 (App. Div. 2017) ("[T]he plaintiff established its standing as the holder of the note by demonstrating that the note was in its possession prior to the commencement of the action, as evidenced by its attachment of the indorsed note to the summons and complaint at the time the action was commenced."). This is true even if Plaintiff did not provide specific details regarding how it came into possession of the Note. *See Aurora Loan Services, LLC v. Taylor*, 34 N.E.3d 363, 366–667 (N.Y. 2015) (explaining that "[a]lthough the better practice would have been for [the plaintiff] to state how it came into possession of the note in its affidavit in order to clarify the situation completely," the plaintiff was not precluded from obtaining summary judgment by not having provided these details).

Defendant also avers that Plaintiff was not the "owner or holder in due course." (Answer ¶ 3.) Under the Uniform Commercial Code, a "'holder in due course" refers to "the holder of an instrument" if:

> (1) the instrument when issued or negotiated to the holder does not bear such apparent evidence of forgery or alteration or is not otherwise so irregular or incomplete as to call into question its authenticity; and
> (2) the holder took the instrument (i) for value, (ii) in good faith, (iii) without notice that the instrument is overdue or has been dishonored or that there is an uncured default with respect to payment of another instrument issued as part of the same series, (iv) without notice that the instrument contains an unauthorized signature or has been altered, (v) without notice of any claim to the instrument described in Section 3-306, and (vi) without notice that any party has a defense or claim in recoupment described in Section 3-305(a).

U.C.C. § 3-302(a); *see also Ameritrust Co. Nat. Ass'n v Dew*, 151 F.R.D. 237, 239 (S.D.N.Y. 1993) (listing requirements); N.Y. U.C.C. § 3-302 (same). As an initial matter, "[r]egardless of

whether [P]laintiff is a 'holder in due course', a mere 'holder' [under UCC § 1-201(21)], or only an 'assignee' or 'transferee,' [it] has standing to bring this action," because it is an assignee of the Note and was a holder of the Note prior to commencing this Action. *Carlin v. Jemal*, 891 N.Y.S.2d 391, 392 (App. Div. 2009) (citations omitted); *see also Aurora Loan Servs. LLC v. Sadek*, 809 F. Supp. 2d 235, 240 (S.D.N.Y. 2011) (same, and finding standing where the plaintiff provided "documentary evidence and declarations affirming that it is the holder of the . . . Note and . . . Mortgage, and has been since before the commencement of this litigation."); N.Y. U.C.C. § 1-201(21)(A) (defining "holder" as "the person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession").

Moreover, Defendant provides no evidence that Plaintiff is *not* a holder in due course, such as evidence that the instrument was clearly forged or that Plaintiff took it in bad faith or with notice of any defect listed in § 3-302(a). But, in any event, "[e]ven if [P]laintiff is not a holder in due course, but only a holder or assignee . . . , and thus subject to all defenses [under § 3-306], [it] is entitled to summary judgment, since [D]efendant[] failed to raise a triable issue of fact regarding [such] defenses." *Carlin*, 891 N.Y.S.2d at 392 (citations omitted); *see also* N.Y. U.C.C. Law § 3-305 ("To the extent that a holder is a holder in due course[,] he takes the instrument free from (1) all claims to it . . . and [with some exceptions,] (2) all defenses of any party to the instrument with whom the holder has not dealt . . ."); *Elliott*, 2018 WL 1701947, at *9 (rejecting argument that the plaintiff must show it was the holder in due course because it "ignores the . . . Note's indorsement in blank" and because the defendant "has not established any claims or defenses that would require [the] [p]laintiff to prove that it is the holder in due course of the . . . Note"). Indeed, Defendant identified no defenses under § 3-306 in her Answer,

and provided no evidence substantiating them.  *See* N.Y. U.C.C. § 3-306 (listing defenses applicable to a holder not in due course).

Accordingly, Defendant's first and second affirmative defenses fail.

### b.  Service of Process

Defendant alleges that the Court lacks personal jurisdiction over Defendant due to improper service of process.  (Answer ¶ 4.)  Federal Rule of Civil Procedure 4(e)(1) permits a plaintiff to serve a defendant by following the procedures set forth by state law in the state where the district is located.  Fed. R. Civ. P. 4(e)(1).  In New York, personal service upon a natural person shall be made either by personal delivery or by delivery to a person suitable to accept service and by mail.  N.Y. C.P.L R. § 308(1), (2).  However, where service by those methods "cannot be made with due diligence," service may instead be made by (1) "affixing the summons to the door" of the individual's "dwelling place or usual place of abode within the state" and (2) by mailing the summons to the individual, either "at his or her last known residence" or "by first class mail . . . at his or her actual place of business in an envelope bearing the legend 'personal and confidential' and not indicating on the outside thereof . . . that the communication is from an attorney or concerns an action against the person to be served," provided that the affixing and mailing both occur within twenty days of each other.  *Id.* § 308(4).  "In New York, a process server's affidavit of service establishes a prima facie case of the account of the method of service, and thus, in the absence of contrary facts, [a court] presume[s] that [the defendant] was properly served with the complaint."  *Old Republic Ins. Co. v. Pac. Fin. Servs. of Am., Inc.*, 301 F.3d 54, 57 (2d Cir. 2002); *Li v. Ichiro Sushi, Inc.*, No. 14-CV-10242, 2016 WL 1271068, at *2 (S.D.N.Y. Mar. 29, 2016) (same).

Here, Plaintiff filed a sworn Affidavit of Service attesting that the process server attempted to serve Defendant three times—on March 1, 2017 at 2:30 PM, on March 2, 2017 at 7:00 AM, and on March 3, 2017 at 8:30 PM—and was unsuccessful. (Aff. of Service (Dkt. No. 10).) Thus, the Affiant swears, Defendant was served (1) on March 4, 2017 at 7:15 am, by affixing a copy of the summons on the door of the Property, Defendant's last known address, and (2) on March 6, 2017, when Defendant was mailed a copy of the summons at her last known address in an envelope marked "Personal and Confidential" and not indicating that the communication was from an attorney. (*Id.*) The Affidavit also attached a copy of the certificate of mailing from the U.S. Postal Service. (*Id.* at 2.) Defendant did not file a sworn denial of the receipt of service to rebut the Affidavit of Service. *See Li*, 2016 WL 1271068, at *2. ("A defendant's sworn denial of receipt of service rebuts the presumption and often necessitates an evidentiary hearing." (alterations and internal quotation marks omitted)). Nor does she identify any facts indicating that the three service attempts did not constitute "due diligence" under § 308(4). *See Mestecky v. City of New York*, 88 N.E.3d 365, 368 (N.Y. 2017) (noting that "some [New York] courts . . . have interpreted 'due diligence' as requiring at least three delivery attempts at different times of day"). For example, there is no evidence in the record that Defendant had a known place of employment and the process server failed to attempt personal service there. *See Gurevitch v. Goodman*, 702 N.Y.S.2d 634, 635 (App. Div. 2000) (finding no due diligence as a matter of law because the affidavit "failed to demonstrate that the process server attempted to ascertain the appellant's business address and to effectuate personal service at that location"). Nor does Defendant contend that she no longer lived at the Property on a regular or "usual" basis. *See Allianz Ins. Co. v. Otero*, 353 F. Supp. 2d 415, 421 (S.D.N.Y. 2004). Therefore, because Defendant has not rebutted Plaintiff's prima face case of service with

any evidence, her affirmative defense of lack of service fails. *See Engel v. Lichterman*, 467 N.Y.S.2d 642, 644 (App. Div. 1983) ("[M]ere denial of receipt . . . is insufficient to overcome the presumption of delivery and trigger the need for a hearing."); *Old Republic Ins. Co.*, 301 F.3d at 58 (collecting cases holding that the defendant's failure to provide "specific facts" to rebut the process server's affidavit cannot show lack of service).

### c. Failure to Mitigate Damages and Disputes as to Amounts Due

Defendant's next affirmative defense is that Plaintiff failed to mitigate its damages. (Answer ¶ 5.) Defendant provides no evidence creating a dispute of fact as to whether Plaintiff did in fact fail to mitigate its damages. *See Golbar Properties, Inc. v. N. Am. Mortg. Inv'rs*, 431 N.Y.S.2d 820, 821 (App. Div. 1980) (holding that it was the wrongdoer's burden to prove the other party failed to mitigate or avoid damages in leasehold mortgage action), *aff'd*, 422 N.E.2d 825 (N.Y. 1981); *see also Marine Midland Bank, N.A. v. Virginia Woods, Ltd.*, 574 N.Y.S.2d 485, 489–90 (Sup. Ct. 1991) (finding no duty to mitigate damages because "[m]ortgage title insurance simply does not insure the *collectability of a loan* . . . Rather, it insures the *enforceability of the mortgage.*"), *aff'd*, 608 N.Y.S.2d 473 (1994); *cf. Sunrise One, LLC v. Harleysville Ins. Co. of New York*, 293 F. Supp. 3d 317, 334 (E.D.N.Y. 2018) (finding dispute of fact with respect to mitigation affirmative defense where the defendant provided evidence that the plaintiff "failed to take all reasonable steps to protect its property"). But, in any event, failure to mitigate damages is not an affirmative defense to a foreclosure action; rather a dispute about the exact amount owed by a mortgagor to a mortgagee does not preclude summary judgment directing a foreclosure sale. *See Layden v. Boccio*, 686 N.Y.S.2d 763, 764 (App. Div. 1998) ("While there may be an issue of fact as to whether [the defendant] should be credited for payments he made . . . , this circumstance does not warrant the denial of summary judgment on

the issue of liability."); *Crest/Good Mfg. Co. v. Baumann*, 554 N.Y.S.2d 264, 265 (App. Div. 1990) ("A dispute as to the exact amount owed by the mortgagor to the mortgagee may be resolved after a reference pursuant to RPAPL [§] 1321, and the existence of such a dispute does not preclude the issuance of summary judgment directing the sale of the mortgaged property." (citations omitted)); *cf. E. Sav. Bank, FSB v. McLaughlin*, No. 13-CV-1108, 2015 WL 5657355, at *6 (E.D.N.Y. Aug. 17, 2015) ("Because foreclosure actions are equitable in nature, the award of a *deficiency judgment* is a matter of discretion, subject to the defenses of . . . failure to mitigate damages."), *adopted*, 2015 WL 5664454 (E.D.N.Y. Sept. 24, 2015). Therefore, the fourth affirmative defense fails.

Similarly, Defendant's fifth affirmative defense—that the amount sued for and allegedly due is incorrect because Plaintiff failed to apply all of Defendant's payments and credit her for other payments received from third parties—also fails. (Answer ¶¶ 6–8.) Again, such disputes regarding the "exact amount owed by the mortgagor to the mortgagee" do not preclude summary judgment directing a foreclosure sale of the mortgaged property. *Crest/Good Mfg. Co.*, 554 N.Y.S.2d at 265; *see also Mishal v. Fiduciary Holdings, LLC*, 971 N.Y.S.2d 334, 335 (App. Div. 2013) (same); *Nat'l Life Ins. Co. v. Koncal Realty Assocs. Ltd. P'ship*, No. 99-CV-11840, 2000 WL 1677954, at *2–3 (S.D.N.Y. Nov. 2, 2000) (collecting cases holding that a court may grant summary judgment in a foreclosure action with the exact sums owed to be determined later). Moreover, Defendant provided no evidence that amounts offered by Plaintiff are not correct, nor does she even demonstrate that she made payment sufficient to cure her default on the Loan or when and in what amounts other third parties made the allegedly unapplied payments. Rather, the record shows that Defendant has been in default for over one year, (Marks Aff. ¶¶ 15–23; *id.* Exs. G–J), and the exact amounts due to Plaintiff under the Loan, (Pl.'s Aff. ¶¶ 5–16).

<u>d.  The Implied Duty of Good Faith and Fair Dealing and Fiduciary Duty</u>

Defendant also offers the affirmative defenses that Plaintiff breached its duty of good faith and fair dealing owed to Defendant by providing her with "[u]nfair and unacceptable loan services" and that Plaintiff breached its fiduciary duty owed to Defendant.  (Answer ¶¶ 9–10.) To show a breach of an implied covenant of good faith and fair dealing, Defendant must provide "facts which tend to show that [Plaintiff] sought to prevent performance of the contract or to withhold its benefits from [Defendant]."  *Aventine Inv. Mgmt., Inc. v. Can. Imperial Bank of Commerce*, 697 N.Y.S.2d 128, 130 (App. Div. 1999).  Put differently, "[i]n order to find a breach of the implied covenant, a party's action must directly violate an obligation that may be presumed to have been intended by the parties."  *Gaia House Mezz LLC v. State Street Bank & Trust Co.*, 720 F.3d 84, 93 (2d Cir. 2013) (internal quotation marks omitted).  Defendant does not allege, let alone provide evidence, that she failed to receive the proceeds of the Loan, or that Plaintiff prevented her from making Loan payments.  Nor is there any term in the Note, Mortgage, or Modification requiring Plaintiff to provide "loan services" to Plaintiff.  Therefore, the sixth affirmative defense fails.

Defendant's breach of fiduciary duty defense also fails.  "As a general matter, a lender is not a fiduciary of its borrower under New York law."  *Iannuzzi v. Am. Mortg. Network, Inc.*, 727 F. Supp. 2d 125, 138 (E.D.N.Y. 2010) (collecting cases); *see also Bank Leumi Trust Co. of N.Y. v. Block 3102 Corp.*, 580 N.Y.S.2d 299, 301 (App. Div. 1992) ("The legal relationship between a borrower and a bank is a contractual one of debtor and creditor and does not create a fiduciary relationship between the bank and its borrower or guarantors.").  Moreover, even assuming a mortgage lender could owe a fiduciary duty to a borrower, Defendant does not identify such a duty here.  *Cf. Mosdos Chofetz Chaim, Inc. v. RBS Citizens, N.A.*, 14 F. Supp. 3d 191, 206–07

(S.D.N.Y. 2014) ("[A]lthough New York courts have held that a fiduciary duty generally does not exist between mortgage brokers and borrowers, a plaintiff may successfully allege a fiduciary duty between such parties if it shows special circumstances that transformed the parties' business relationship to a fiduciary one." (alterations and internal quotation marks omitted)). Nor does Defendant identify how any such fiduciary duty was knowingly breached. *See Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 138 (2d Cir. 2011) (listing elements of a breach of fiduciary duty claim under New York law).

### e. Statute of Limitations

Defendant's final affirmative defense is that the six-year statute of limitations to commence a foreclosure action in New York expired. (Answer ¶ 11 (citing N.Y. C.P.L.R. § 213(4).) "Under New York law, the statute of limitations for a mortgage foreclosure action is six years 'from the due date for each unpaid installment, or from the time the mortgagee is entitled to demand full payment, or from the date the mortgage debt has been accelerated.'" *Mcintosh v. Fed. Nat'l Mortg. Ass'n*, No. 15-CV-8073, 2016 WL 4083434, at *4 (S.D.N.Y. July 25, 2016) (quoting *Plaia v. Safonte*, 847 N.Y.S.2d 101, 102 (App. Div. 2007)). "However, even if a mortgage is payable in installments, once a mortgage debt is accelerated, the entire amount is due and the Statute of Limitations begins to run on the entire debt." *Wells Fargo Bank, N.A. v. Burke*, 943 N.Y.S.2d 540, 542 (App. Div. 2012) (internal quotation marks omitted). When acceleration of the mortgage debt on default is made optional with the holder of the note and mortgage, as it is here, (*see* Note ¶ 7(C); Mortgage 15 ¶ 22), "some affirmative action must be taken evidencing the holder's election to take advantage of the accelerating provision," *Wells Fargo Bank, N.A.*, 943 N.Y.S.2d at 542. Such acceleration must include "clear and unequivocal" notice to the borrower, and "[c]ommencement of a foreclosure action may be sufficient" to

satisfy this standard.  *Id.* at 542–43; *see also United States v. Alessi*, 599 F.2d 513, 515 n.4 (2d Cir. 1979) (same).

Here, Defendant defaulted on the Loan on June 1, 2016; Plaintiff mailed the notices of default required by New York law and the Mortgage on August 11 and 12, 2016; and, after Defendant failed to cure, Plaintiff invoked its right to accelerate the Mortgage and filed the Complaint on February 6, 2017.  (Pl.'s 56.1 ¶¶ 8–12; Compl; Marks Aff. Ex. J ("If you do not cure your default, we may accelerate your mortgage, and the full amount you owe will become due and payable.  We may also initiate foreclosure proceedings."); *id.* Ex. G (notice of default under New York law).)  Therefore, whether the statute of limitations began to run on the deadline to cure listed in the last sent notice—September 14, 2016—or at some later point prior to the filing of the Complaint, the acceleration occurred in late 2016 or early 2017 and thus, Plaintiff commenced this Action well within the six-year statute of limitations.   (*See* Marks Aff. Ex. J).  *See Assets Recovery 23, LLC v. Gasper*, No. 15-CV-5049, 2017 WL 3610568, at *8 (E.D.N.Y. July 25, 2017) ("Although either notice of a demand or commencement of a foreclosure action can constitute an affirmative act of acceleration, where the notice of default provides 'clear and unequivocal' language that a loan would become due in its entirety upon expiration of the curing period, the date of expiration provided in the notice serves as the date of acceleration for the purposes of the six-year statute of limitations."), *adopted*, 2017 WL 3610517 (E.D.N.Y. Aug. 21, 2017).  Indeed, even if the default date—June 1, 2016—triggered the statute of limitations, this Action would still be timely.  (Pl.'s 56.1 ¶ 8.)

### 3.  Counterclaims

Defendant's Answer raises five counterclaims: (1) for economic damages for bringing an action without standing; (2) for fraud and misrepresentation because Plaintiff has no standing or possession of the Note; (3) for violation of the Deceptive Practices Act; (4) for estoppel; and (5) for costs and attorney's fees.  (Answer ¶¶ 12–28.)  Defendant did not move for summary judgment on these counterclaims, but Plaintiff moved to dismiss them.  (Not. of Mot.)

### a.  Standing and Fraud/Misrepresentation

Defendant's first two counterclaims both claim damages from the fact that Plaintiff fraudulently "brought this [A]ction without standing for the purpose of inducing Defendant" to do something—namely, to pay money not actually owed to Plaintiff and to assign, convey, or transfer title to the Property, which Plaintiff does not own.  (Answer ¶¶ 12, 15.)  Defendant also alleges that "Plaintiff does not have in its possession, as the holder in due course or in any other capacity, . . . the original Note associated with the Mortgage it purportedly owns." (*Id.* ¶ 16.)  As the Court already explained, Plaintiff has standing to bring this Action, as both a written assignee and possessor of the Note.   Defendant provides no additional evidence or even allegations that would disrupt this analysis.

Moreover, these counterclaims must be dismissed as improperly pled.  First, these claims, which sound in fraud, fail to satisfy the heightened pleading standard under Federal Rule of Civil Procedure 9(b).  *See Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 52 (2d Cir. 1995) (explaining that "plaintiffs must allege facts that give rise to a strong inference of fraudulent intent," either through "alleging facts to show that defendants had both motive and opportunity to commit fraud," or "facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." (internal quotation marks omitted)).  Defendant's Answer is devoid of any facts

plausibly suggesting fraudulent intent by Plaintiff in commencing this Action.  Additionally,

Defendant has not alleged a plausible injury in these counterclaims, because she does not allege

that she has paid any money to Plaintiff or that she has transferred title to the Property to Plaintiff

as a result of this Action.  Nor could she, in light of the undisputed evidence that Defendant is

and remains the title holder to the Property and that Plaintiff has made no payments under the

Loan since before June 1, 2016.  (Marks Aff. ¶¶ 4, 15, 20–23.)

### b.  Deceptive Practices Act

Defendant's third counterclaim is that Plaintiff violated the Deceptive Practices Act, N.Y.

Gen. Bus. Law § 349, by "misrepresenting and omitting material facts."  (Answer ¶¶ 18–23.)

Specifically, Defendant alleges that Plaintiff did this by:

> a. Misrepresenting to Defendant the nature of the documents [she] w[as] signing;
> b. Failing to provide Defendant with a copy of any contract, bond, note or mortgage;
> c. Failing to provide Defendant with the requisite notices of cancellation;
> d. Misrepresenting to Defendant that fees payable from the proceeds of the mortgage were bona fide and reasonable and necessary for the extension of credit; and
> e. Failing to disclose to Defendant that the mortgage is negatively amortizing.

(*Id.* ¶ 21.)  Plaintiff argues that this claim is time-barred and is insufficiently pled.  (Pl.'s Mem.

16–18.)

The statute of limitations for Defendant's § 349 claim "is three years from the date of

accrual, which occurs when [Defendant] is injured by the deceptive act or practice that violated

the statute, and is not dependent upon any date when discovery of the alleged deceptive practice

is said to occur."  *Med. Herald Pub. Co. v. J.P. Morgan Chase Bank, N.A.*, No. 13-CV-6979,

2014 WL 6769755, at *4 (S.D.N.Y. Nov. 25, 2014) (internal quotation marks omitted).

Defendant argues that the alleged misrepresentations and omissions occurred at the time of the

Loan origination, in July 2007.  (Pl.'s Mem. 17.)  While this is likely correct, Defendant's

Answer provides no dates or specific details permitting the Court to infer that *all* of the alleged acts occurred at the time the Note and Mortgage were signed. However, any § 349 claims based on actions more than three years from the date of the Answer, May 25, 2017, are time-barred.

Even assuming some of Defendant's § 349 claims are not time-barred, they are inadequately pled. Section 349 provides a private right of action to "any person who has been injured by reason of violation of" the Act—that is, from "[d]eceptive acts and practices." § 349(a), (h). However, the law "requires, as a prerequisite to liability, that [Defendant] establish injury to the public generally as distinguished from injury to [Defendant] alone." *Tinlee Enterprises, Inc. v. Aetna Cas. & Sur. Co.*, 834 F. Supp. 605, 608 (E.D.N.Y. 1993); *see also Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741, 744 (N.Y. 1995) (explaining that "[§] 349 is directed at wrongs against the consuming public" and "as a threshold mater, plaintiffs claiming the benefit of [§] 349 . . . must charge conduct of the defendant that is consumer-oriented," that is, "that the acts or practices have a broader impact on consumers at large"). Defendant does not meet this standard. The Answer does not specify any deceptive practice by Plaintiff or its predecessors directed to consumers generally, nor does it allege an injury to the public. (*See* Answer ¶¶ 19–23.) Rather, it focuses on the interactions and resulting Loan contract between Plaintiff and Defendant. (*Id.*) This is insufficient to allege a § 349 violation. *See Oswego Laborers' Local 214 Pension Fund*, 647 N.E.2d at 744 ("[P]rivate contract disputes, unique to the parties . . . would not fall within the ambit of the statute."); *Drepaul v. Allstate Ins. Co.*, 749 N.Y.S.2d 439, 440 (App. Div. 2002) (finding no evidence that the defendant "engaged in acts or practices . . . which had an impact on consumers at large, rather than acts limited to just the parties"); *see also Williams v. Black Entm't Television, Inc.*, No. 13-CV-1459, 2014 WL 585419, at *9 (E.D.N.Y. Feb. 14, 2014) ("Plaintiff has alleged no

such consumer-oriented act or injury."); *Hutter v. Countrywide Bank, N.A.*, 41 F. Supp. 3d 363, 375 (S.D.N.Y. 2014) (same), *aff'd in part, vacated in part, remanded*, 710 F. App'x 25 (2d Cir. 2018).  Accordingly, the third counterclaim is dismissed.

### c. Estoppel

Defendant's fourth counterclaim alleges that "Plaintiff should be estopped from seeking satisfaction of the [N]ote and [M]ortgage because, upon information and belief, its misrepresentations induced Defendant into entering the [N]ote and [M]ortgage under their current terms."  (Answer ¶ 25.)[3]  "A mortgage lender may be estopped from asserting rights under a mortgage to prevent a fraud or injustice to the person against whom enforcement is sought, who in justifiable reliance upon the lender's words or conduct has been misled to his detriment."  *First Union Nat. Bank v. Tecklenburg*, 769 N.Y.S.2d 573, 574 (App. Div. 2003). However, to state a claim of equitable estoppel, Defendant must plead "(1) conduct which amounts to a false representation or concealment of material facts; (2) intention that such conduct will be acted upon by the other party; and (3) knowledge of the real facts" by Plaintiff, and her own "(1) lack of knowledge of the true facts; (2) reliance upon the conduct of the party estopped; and (3) a prejudicial change in her position."  *Id.* at 574–75 (internal quotation marks omitted).  Defendant has not pled facts satisfying any of these requirements.  She has not identified *what* misrepresentations "induced" her into entering into the Note and Mortgage terms,

---

[3] To the extent this was meant to be combined with the § 349 claim as a reason to toll the statute of limitations, s*ee Meridien Int'l Bank Ltd. v. Gov't of the Republic of Liberia*, 23 F. Supp. 2d 439, 447 (S.D.N.Y. 1998) ("Equitable estoppel is another doctrine which tolls the statute of limitations when a party claiming to benefit from the statute carries on in such a way as to lull the other party into delay or misrepresent the situation in such a manner that equity requires tolling of the statute."); *see also New York State Mortg. Loan Enf't & Admin. Corp. v. N. Town Phase II Houses, Inc.*, 594 N.Y.S.2d 183, 184 (App. Div. 1993) (rejecting estoppel affirmative defense), it still fails even if timely for the reasons explained above.

let alone Plaintiff's intent to induce her or an actual prejudicial change in her position. Thus, this counterclaim is dismissed. *See Wallace v. BSD-M Realty, LLC*, 36 N.Y.S.3d 884, 887 (App. Div. 2016) ("In the absence of evidence that a party was misled by another's conduct or that the party significantly and justifiably relied on that conduct to its disadvantage, an essential element of estoppel is lacking." (alteration and internal quotation marks omitted)).

### d. Costs and Attorney's Fees

Finally, Defendant requests attorney's fees and costs it incurred "for the successful defense of a Foreclosure Action." (Answer ¶ 28.) This is a request for relief, not an independent cause of action. In any event, Defendant did not succeed in its defense of this Action, and therefore is not entitled to such fees and costs. Rather, under the express terms of the Mortgage, *Plaintiff* is entitled to collect attorneys' fees in this Action. (Mortgage 9–10 ¶ 9; *id.* at 15 ¶ 22.) *See* N.Y. Real Prop. Law § 282.

### III. Conclusion

For the foregoing reasons, Plaintiff's Motion for Summary Judgment is granted and Defendant's counterclaims are dismissed. The Clerk of Court is respectfully directed to terminate the pending Motion. (Dkt. No. 37.) The Court will enter a judgment of foreclosure separately.

SO ORDERED.

DATED:     September *13*, 2018
           White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

24